(38 Misc. Rep. 446.)

PEOPLE ex rel. SINGER v. KNICKERBOCKER TRUST CO. et al.

(Supreme Court, Special Term, New York County. July, 1902.)

1. FOREIGN CORPORATIONS—INSPECTION OF BOOKS—RIGHTS OF STOCKHOLDER.
    Under the stock corporation law (section 53) as amended in Laws 1897, c. 384, § 3, a stockholder of a foreign corporation which has a transfer agent in the state for the transaction of business in the state, but which does not keep therein a stock book required by law, is entitled to inspect books kept by the transfer agent, and by the registrar of transfers of stock, containing some or most of the information which would be shown by a stock book when kept; as these books may be considered as books kept by the corporation.

2. SAME.
    The stockholder may also inspect any papers officially in the possession of the secretary and treasurer of the corporation, in its New York office, from which he can obtain similar information.

3. SAME—OFFICE—SERVICE OF PROCESS.
    A foreign corporation has an office for the transaction of business in the state for the purposes of serving process upon it where the corporation pays rent for the office, has a person permanently in charge of it, deposits money from it, and pays dividends at it.

Application by the people, on the relation of Arthur J. Singer, for a writ of mandamus to the Knickerbocker Trust Company and others. Mandamus granted.

Hornblower, Byrne, Miller & Potter, for relator.

Harmon & Mathewson and Davies, Stone & Auerbach, for respondents.

HALL, J. This is an application on petition for a peremptory writ of mandamus to compel the respondents to allow the relator to examine and make extracts from the stock books of the Colorado Fuel & Iron Company, under the provisions of section 53 of the stock corporation law (Laws 1897, c. 384, § 3); or, if there is no such book as described in the statute, to examine, and extract from, any books and papers containing the information required by law to be kept in such stock book.

The relator's right to a peremptory writ must depend, of course, upon uncontested facts sufficient to entitle him to the remedy. I do not discover in the voluminous affidavits submitted any substantial dispute of material facts. True, there are, in the affidavits submitted by the respondents, statements of legal advice and opinion, and of belief founded upon such advice; but they are rather the opinions and conclusions of counsel upon facts presented to them, and from the eminence of counsel presenting them are entitled to grave consideration; still the court is called upon to form conclusions, upon the same facts, which, in its opinion, upon reason and authority may differ with them.

The admitted facts seem to be substantially as follows: The Colorado Fuel & Iron Company is a foreign corporation organized under the laws of Colorado; its business being generally to prospect for, develop, mine, and sell coal and other minerals, to deal in coal and all kinds of fuel, etc., and to purchase, construct, acquire, etc., all necessary machinery and apparatus for such mining and manufacturing. The principal office of the company is in Denver, Colo., but it has an office at No. 71 Broadway, New York City, in charge of the respondent Phelps, its assistant secretary and treasurer. The stock of the company is listed on the New York stock exchange. The Knickerbocker Trust Company is its transfer agent, and the Atlantic Trust Company is its registrar of transfers of stock. The Knickerbocker Trust Company keeps books purchased with its money, and kept by its clerks, containing some or all of the entries required by section 53 of the stock corporation law, and also containing other information not required by that law. The Atlantic Trust Company keeps a book or books in which all transfers of stock of the Colorado Fuel & Iron Company are entered. All transfers of stock by certificate are countersigned by an officer of such trust company. The Colorado Fuel & Iron Company has not and

does not keep in its New York office the stock book required by said section 53, but its assistant secretary and treasurer, the respondent, Phelps, has in his official possession a partial list of stockholders of the company, which is not now a correct list. The relator is a stockholder of the corporation to the extent of 24,000 shares of the par value of $2,400,000, and of the market value of about $2,100,000. The annual meeting of the company is to be held on August 20th, at Denver, for the election of officers and directors. The relator is not entirely satisfied with the present management of the company, and desires to advise and consult with the other stockholders, who are or may be of similar opinion, with a view to taking united and concerted action at such annual meeting if, upon an explanation of matters affecting the management, it shall be deemed wise and proper. I do not find in the papers any statement of the capital stock of the company, or the approximate number of its stockholders, but, judging from all the facts set forth in the moving papers, it is fair to infer that its capitalization is very large, and its stockholders very numerous and scattered. The holdings of the relator are certainly substantial, and, except for the gigantic aggregations of capital which we read of daily, might almost be designated as enormous in amount. This suggestion is merely by way of demonstrating that the relator certainly has a very considerable interest in the management and conduct of the company. The relator has made due and sufficient demand upon Mr. Phelps, the assistant secretary and treasurer of the company, and upon the Knickerbocker Trust Company and the Atlantic Trust Company, for an inspection and examination of the books or papers containing the desired information, and for leave to make extracts from the same, and no question is raised as to the sufficiency of the demand.

It is quite clear to my mind that, whatever rights a stockholder has at common law to an inspection of the books of a domestic corporation under the visitorial power of the courts of this state, the right does not apply to foreign corporations. This view is amply sustained by authority. In re Rappleye, 43 App. Div. 84, 59 N. Y. Supp. 338; People v. Lake Shore & M. S. R. Co., 11 Hun, 1; and many other cases. So that whatever rights the relator has are by virtue of statutory enactments in this state, and such authority, if any exists, must be found in section 53 of the stock corporation law of 1897, and, in order to fully understand and appreciate the force and intention of the present law, it is necessary to examine into the state of the law prior to the passage of the act of 1897. The act (Laws 1842, c. 165), which is substantially re-enacted in the stock corporation law of 1890 and 1892, provided in effect that the transfer agent, in this state, of any foreign corporation, whether such agent be a corporation or a natural person, shall exhibit to any stockholder of such corporation, when required by him, the transfer book and a list of the stockholders thereof, if in their power to do so, and provides penalties for refusal. It will be noticed that this law and its penalties were directed, not against the corporation, but against its transfer agent, and it contains no requirement that the foreign corporation shall be one carrying on business in this

state. If this law were still in existence, there would be but little difficulty presented in the present case. The company in question is a foreign corporation; the Knickerbocker Trust Company is its transfer agent; and the Atlantic Trust Company holds a relation sufficiently similar to bring it within the purview of the act. But the legislature of 1897 repealed the Laws of 1890 and 1892, and enacted a law differing from these in many notable particulars. It is unnecessary to quote section 53 of the present stock corporation law in full, but the material differences between it and the former act may be pointed out, and these are: That it applies only to foreign stock corporations having an office for the transaction of business in this state. Its provisions and penalties are directed principally and primarily against the foreign corporation, rather than against the transfer agent. It provides what the stock book shall contain, and finally provides that, if the foreign corporation has a transfer agent in this state, the stock book may be deposited in the office of such agent, and shall be open to inspection, etc., and provides penalties for refusal to allow such inspections. At first glance it would appear as if this law were passed for the express purpose of relieving the transfer agent from any obligations to allow an inspection of any book containing the information required to be stated in the stock book, unless the foreign corporation had prepared and deposited with the transfer agent the stock book prepared by its officers or employés; and if this statute is to be strictly construed, and within the narrowest limitation of its language, I am inclined to think that such would be the result. It is only by giving to this remedial statute a fair, just, and liberal construction to aid in the advancement of the remedy provided that any other result can be reached. The courts of this state have said of similar statutes that, although they were penal in their nature, still that a liberal construction should be given to them in order that the remedy provided might not be defeated. If this act is to be strictly and narrowly construed, and the utmost force given to every word, its evasion is rendered so simple as to make it utterly useless for any purpose. It might be claimed that, because the stock book did not contain all of the information required by the statute, it need not be produced for inspection; or if it were called a transfer ledger, instead of a stock book, the stockholder would be without redress; or if it were kept in a place other than the office of the company, or the company requested its transfer agent or some outside party to prepare it, or if it were not deposited in the hands of the transfer agent by the company, but by an outside party, not an officer of the company, or a hundred other equally untenable excuses were offered, the purpose of the act might be defeated. It is therefore necessary, in construing such an act, to inquire primarily as to the mischief intended to be remedied. The courts of this state having no visitorial powers as to foreign corporations, the legislature designed, by this act, to provide a remedy, and give to stockholders of foreign corporations the same rights of information as they had regarding domestic corporations. And it is a most important right of a stockholder to be informed, in the only way possible, of the names of those interested

with him in the property represented by his stock, and to confer with them concerning the interests of their joint enterprise. The corporation is composed only of its stockholders; they are the owners and proprietors of all its property, and are deeply concerned in its management; the directors and officers are only the creatures of the stockholders, dependent upon their suffrages, and nothing else. The stockholders have contributed the money, and created the corporation, and also created its directors and officers. Therefore it is the duty of the officers, at all times, rather to aid the owners of the property under their control to understand every fact regarding the management of their property, than to endeavor, by hiding behind the strict letter of the law, in an effort to defeat their rights. What would be said of a partner who kept the books of a firm from his copartners, and refused them all information as to the management of the business? The answer is plain; and yet a corporation is in effect but a larger partnership. I have premised so much in order to show the justice and necessity of a liberal construction of the law in order, if possible, that the legislative intention may be made effective. The foreign corporation the Colorado Fuel & Iron Company is required by law to keep a stock book containing certain information of interest to and for the benefit of stockholders; it is not for the benefit of the corporation as such, but for that of the owners of its property. But a corporation as such cannot keep a book; it is a fictitious entity; it can act only through its officers or other agents. It can appoint agents and employés, and the officers of the corporation in question are specifically authorized to employ or appoint a transfer and registering agent in New York, and by virtue of that authority the corporations respondent have been appointed. Therefore they can do nothing save by virtue of their agency. The foreign corporation, then, which can only act by agents, has seen fit to act through these corporations; their every act is by virtue of the agency alone; it must fairly be presumed, I think, that the dealings in stock of the corporation in question are upon such a large scale that their ordinary officers and employés could not accomplish the work. There is no magic in the fact that the agent employed is a corporation; it might have been an individual, or it might have been an ordinary salaried employé designated as the "transfer agent," and certainly, if that were the case, the acts of the agent within the scope of his authority would be the acts of the principal. I think, then, that the reasonable conclusion is that the acts of the corporations respondent were simply the acts of the foreign corporation in question, and the preparation of the books in their possession was in the course of their agency, and in that sense, at least, the books may be said to have been prepared by the foreign corporation. What interest had the corporations respondent in preparing these books except in course of their agency, for which they were presumably duly compensated? It was just as necessary for them to prepare these books in course of their agency as it was to countersign or issue or cancel stock certificates. I have had, in my remarks, upon this subject of the books, particular reference to the Knickerbocker Trust Company, but I am of opinion

that, if the books kept by the other trust company contain similar information, they come within the same category. I have been somewhat hasty in my examination of the authorities cited in the briefs, but I have given sufficient attention to them to become convinced that the fact that the books kept by the trust companies contain more or less information than is required by the statute cannot be availed of to defeat the rights of the stockholder. If the foreign corporation has exceeded the requirements of the law, or has failed to fully comply with them, it is no fault of the relator, and he cannot thus be deprived of his remedy. If the books contain more than the law requires he can disregard the surplusage, and if they contain less he must content himself with what he can get; but neither the foreign corporation or its officers, nor the trust companies, should be allowed to deprive the stockholder of his rights merely because they have failed in their duty.

If the respondent Phelps has in his possession, as an officer of the company, any papers containing information similar to that required to be stated in the stock book, the relator is entitled to inspect them; if the company has only partially complied with the law, the relator is entitled to such benefit as he can obtain through that partial compliance. It will not do for him, as an officer of the corporation, to seek to take advantage of its failure to comply fully with the law. The attitude of this foreign corporation and the officer in charge of its New York office is, to say the least, somewhat remarkable. This officer does not hesitate to say that his corporation is acting in open defiance of the law,—possibly with the idea that the penalty of such defiance is only the payment of a sum of money insignificant in comparison with the resources of the corporation.

The mandamus may properly be directed against the officers of the corporation having, or who ought to have, the custody of the stock book. This is settled by numerous authorities. The only remaining question is whether the Colorado Fuel & Iron Company has an office in this state for the transaction of its business. I have not much doubt upon that subject, so far as the purposes of the law in question are concerned. It has an office, or, rather, a number of offices, at 71 Broadway, the rent of which is paid by the company. They appear to be permanently in charge of the respondent Phelps as assistant secretary and treasurer. He is presumably paid a salary out of the funds of the company for transacting its business. Moneys of the company are deposited in New York banks from that office. Dividends are paid here. Phelps says that the offices are maintained for the convenience of the officers when they come to New York, but does he contend that the officers have a right to occupy offices provided by the company for any other purpose than transacting business of the company? The handling of moneys, and payment of dividends, and carrying on other financial affairs of the company, are just as much the transaction of business as the sale of its products. The question as to whether any, or what part, of its capital is used in this state for the purpose of determining its liability to taxation has no application to the case

before the court. I have not given this case as much or as careful examination, perhaps, as its importance demands, or as I should like to have given it had a speedy decision not been necessary to preserve the rights of the relator, nor am I entirely free from doubt upon the main question involved; but such examination as I have been able to make has convinced me that the act in question should be construed liberally, and, under such construction, that the relator is entitled to the relief asked. Let a mandamus issue as prayed for in the petition.

Mandamus granted.